United States District Court

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES JENKINS, SHAWN PICKETT, AND ARNOLD THREETS, | No. C 08-03401 MHP |
| Plaintiffs, | **MEMORANDUM & ORDER** |
| v. | **Re: Defendant's Motion to Dismiss or Stay Pursuant to the *Colorado River* Doctrine** |
| CITY OF RICHMOND, a California Governmental Entity; and DOES 1 through 50, inclusive, | |
| Defendants. | |

Alleging discrimination and retaliation violating federal civil rights statutes, plaintiff police officers James Jenkins, Shawn Pickett, and Arnold Threets ("plaintiffs") filed this action on July 15, 2008. Defendant City of Richmond ("defendant") moves to dismiss or stay this action pursuant to the Colorado River doctrine, in deference to a parallel action in the Superior Court of the State of California for the County of Contra Costa.[1] Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

Plaintiffs filed this action on July 15, 2008. See Docket Number 1 (Complaint). The three plaintiffs in this action are police officers currently employed with the Richmond Police Department in Richmond, California. Complaint ¶ 21. Officers Pickett and Threets are lieutenants, and Officer Jenkins is a sergeant. Id. ¶ 22. All three officers are African-American. Id. ¶¶ 8-10. Plaintiffs

advance four causes of action for discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and 42 U.S.C., section 1981. Complaint ¶¶ 42-69.

The three plaintiffs, along with five other African-American police officers, brought an earlier suit against the City of Richmond in Contra Costa County Superior Court on March 6, 2007. See Defendants' Request for Judicial Notice (Def.'s RJN), Exh. 2 (State Complaint). The eight state court plaintiffs advanced eleven causes of action, including harassment, discrimination, and retaliation violating California state law, breach of contract, and several common law torts. See id. The state court granted demurrer to some of these causes of action. See id., Exh. 4. In the state court action, the eight state plaintiffs seek injunctive relief, monetary damages, and punitive damages. RJN, Exh. 3 at 29-30. Defendants in the state action include not only the City of Richmond but also individual defendants Chris Magnus and Lori Ritter. Id. at 1. The parties to the state action have exchanged multiple sets of written discovery and hundreds of thousands of documents, and have participated in at least two demurrer proceedings and four case management conferences. Docket Number 16 (Drake Dec.) ¶ 5. The case is currently set for trial on September 14, 2009. Opposition (Opp.) at 3; Reply at 2.

The factual allegations underlying the claims before this court stem exclusively from events occurring after March 2007. See Complaint ¶ 26-41. The three federal plaintiffs allege, *inter alia*: (1) In August 2007, Chief Magnus stated he would look outside the department to hire the next Deputy Chief because all of the captains and lieutenants had "baggage" (allegedly referring to the prior complaints), id. ¶ 26; (2) Deputy Chief Medina stripped plaintiff Threets of his risk management duties "because of the lawsuit," id. ¶ 29; and (3) Plaintiff Threets was not allowed to attend the FBI Academy, despite being the most senior lieutenant in line to attend, id. ¶¶ 27-29. The operative first amended complaint in the state action, filed on June 25, 2007, does not include these events as factual bases of the causes of action contained therein. See Def.'s RJN, Exh. 3.

The state action alleges violations of California law only, whereas the federal action alleges violations of federal law only. Compare id. with Complaint. However, the California anti-discrimination statutes in question are patterned after federal statutes and often look to federal law. Compare Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-253 (1981) (setting forth

2

the standard for Title VII retaliation) with Colorassi v. Coty U.S., Inc., 97 Cal. App. 4th 1142, 1152 (2002) (applying a substantially identical test to retaliation claims under California's Fair Employment and Housing Act (FEHA)).

LEGAL STANDARD

Federal courts recognize several traditional bases for abstaining from exercising their jurisdiction. See, e.g., Younger v. Harris, 401 U.S. 37 (1971) (holding abstention to be appropriate where federal proceedings would restrain state criminal proceedings); Railroad Comm'n v. Pullman, 312 U.S. 496 (1941) (holding abstention to be appropriate in some cases requiring resolution of a sensitive question of federal constitutional law that may be mooted or narrowed by a definitive ruling on state law issues). There are some exceptional cases in which the traditional abstention categories are inapplicable but "considerations of wise judicial administration" may nevertheless warrant the stay or dismissal of a federal lawsuit pending the resolution of concurrent state court proceedings. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813-814, 817-818 (1976). However, because federal courts have "a virtually unflagging obligation . . . to exercise the jurisdiction given them," id. at 817 (citations omitted), the Supreme Court has cautioned that only "exceptional circumstances" can justify departure from the general rule that federal courts must exercise the jurisdiction granted to them, id. at 813, quoting, County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-189 (1959).

The application of what has become known as the Colorado River doctrine requires a court first to address the threshold issue of whether there are parallel state and federal proceedings involving the same matter. See Moses H. Cone Memorial Hosp. v. Mercury Center, 460 U.S. 1, 13-15 (1983). "Exact parallelism" between the actions is not required; instead, the actions need only be "substantially similar." Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989).

If the threshold question of similarity is answered in the affirmative, the court must then determine whether the sort of "exceptional circumstances" warranting a stay or dismissal are present. To make such a determination, courts consider a number of factors, including: (1) whether the state or federal court has assumed jurisdiction over a res; (2) the relative convenience of the

1 forums; (3) the desirability of avoiding piecemeal litigation where Congress has expressed a
2 preference for unified state litigation; (4) the order in which the forums obtained jurisdiction; (5)
3 whether state or federal law controls; and (6) whether the state proceeding is adequate to protect the
4 plaintiff's rights. Colorado River at 818-819; Moses H. Cone at 24-26; see also United States v.
5 Morros, 268 F.3d 695 (9th Cir. 2001) (explicating the "piecemeal litigation" prong). Ninth Circuit
6 jurisprudence also enumerates a seventh factor: whether the plaintiff is forum shopping. Fireman's
7 Fund Ins. Co. v. Quackenbush, 87 F.3d 290, 297 (9th Cir. 1996). No single factor is determinative,
8 Colorado River at 818-819, and the factors are "to be applied in a pragmatic, flexible manner with a
9 view to the realities of the case at hand," Moses H. Cone at 21.

10 If the district court determines that abstention is appropriate, the court has the discretion to
11 either stay or dismiss the proceedings. Id. at 13-16. Since federal courts are bound to give
12 preclusive effect to state court judgments under the Full Faith and Credit Clause, whether the action
13 is stayed or dismissed is of "little moment;" either course represents a choice by the court not to
14 exercise its jurisdiction. See Wilton v. Seven Falls Co., 515 U.S. 277, 283 (1995).

15

16 DISCUSSION

17 I.   Colorado River Doctrine

18 Defendant moves to dismiss or stay plaintiff's federal action based on the Colorado River
19 doctrine. The parties agree that the threshold question is whether the two actions in question are, in
20 fact, parallel actions. They disagree upon the answer to this question. On the one hand, the
21 plaintiffs and the defendant in the federal suit are merely a subset of the parties in the state suit, and
22 the complaints are strikingly similar, although the federal complaint is couched in terms of federal
23 law violations. On the other hand, the relevant facts alleged in the present action arise entirely from
24 the time period following the events leading to the state action. Because, as explained below,
25 defendants do not meet their burden under the Colorado River factors, the court assumes without
26 deciding that the two cases involve parallel litigation.

27 As set forth above, a litigant moving the court to abstain pursuant to Colorado River doctrine
28 has the burden of showing that "exceptional circumstances" warranting a stay or dismissal are

4

present. Colorado River at 813. While there is no exclusive list of factors to determine whether such circumstances obtain, Supreme Court and Ninth Circuit jurisprudence have primarily focused on the seven elements noted above. The parties agree that the first two Colorado River elements (jurisdiction over a res and relative convenience) are inapplicable to this case; therefore, it is appropriate to examine the five remaining factors.

a.    Desirability of Avoiding Piecemeal Litigation

There can be little doubt that the two actions in question have substantial overlap. The parties in the federal suit are a subset of the parties in the state suit. Many of the witnesses and much of the discovery may be expected to overlap. If the Supreme Court's goal in Colorado River and its progeny had been purely to maximize judicial efficiency by eliminating piecemeal litigation, then there would be little doubt that this case would meet that standard. Judicial efficiency, however, is not the only interest implicated by federal court abstention in favor of concurrent state proceedings. Colorado River did not provide the federal courts with a mandate to abstain from exercising their jurisdiction every time such abstention would avoid piecemeal litigation. Binding Ninth Circuit case law makes it clear that abstention is only appropriate where, as in Colorado River, Congress has passed a law expressing a preference for unified state adjudication:

> *Colorado River* does not say that every time it is possible for a state court to obviate the need for federal review by deciding factual issues in a particular way, the federal court should abstain. As the Supreme Court has observed, such a holding would make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States. Rather, *Colorado River* stands for the proposition that when Congress has passed a law expressing a preference for unified state adjudication, courts should respect that preference. As the Third Circuit astutely observed, it is evident that the avoidance of piecemeal litigation factor is met, as it was in *Colorado River* itself, only when there is evidence of a strong federal policy that all claims should be tried in the state courts.

Morros at 706-707 (footnotes and internal quotations omitted); see also Wilton at 284 (noting that the Colorado River court "deemed dispositive a clear federal policy against piecemeal adjudication of water rights").

Defendant points out that the "insignificant differences" between the two actions in question demonstrate that a refusal to abstain would create a risk of piecemeal litigation. This is no doubt

5

true. Yet, for good or for ill, piecemeal litigation is daily fact of life in our federal system. Defendants fail to point to a Congressional policy expressing a preference for unified state adjudication in the civil rights context, which would trigger the sort of concern about piecemeal litigation at issue in Colorado River and its progeny. Indeed, if anything, the civil rights context militates more strongly in favor of federal courts exercising their jurisdiction. See Tovar v. Billmeyer, 609 F.2d 1291, 1293 (9th Cir. 1979) (holding that the federal courts' "unflagging obligation" to exercise the jurisdiction given to them is particularly weighty in the context of 42 U.S.C, section 1983, cases); see also Martinez v. Newport Beach City, 125 F.3d 777, 785 (9th Cir. 1997), overruled on other grounds, Green v. City of Tuscon, 255 F.3d 1086 (9th Cir. 2001), citing, Tovar at 1293 (noting that "the same factors which weigh in favor of *Colorado River* abstention are of little weight where the pending federal proceeding is a § 1983 cause of action").[2] Since defendant is unable to point to any Congressional preference for unified state adjudication, the mere fact that piecemeal litigation may occur does not tip this factor in favor of abstention.

### b. Priority of State and Federal Proceedings

The question of priority is not measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the respective actions. See Moses H. Cone at 21. Plaintiffs filed their state action sixteen months prior to filing the present action. Significant activity has occurred in the state case, including multiple demurrer hearings and voluminous discovery. If the two actions, despite being based on different underlying facts, are indeed parallel actions (as the court assumes for the purposes of this analysis), then the state action is plainly much further advanced than the federal action. This factor favors abstention.

### c. Whether State or Federal Law Controls

Each of plaintiffs' claims in the instant action asserts a violation of federal law. Defendant does not argue the merits of this factor in its papers, other than to note that California courts often look to federal decisions interpreting federal anti-discrimination statutes when interpreting the FEHA. See Motion at 10-11. This does not mean that the statutes or their remedies are identical,

6

and defendant has made no such showing. "It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy . . . ." Tovar at 1294, quoting, Monroe v. Pape, 365 U.S. 167, 183 (1961). Federal law controls the claims brought in this action; therefore, this factor weighs against abstention.

### d. Adequacy of the State's Proceedings to Protect the Plaintiffs' Rights

Defendant asserts that the state court action can provide fair, adequate, and timely relief, and that the similarity of the federal and state statutory schemes supports a conclusion that the state court proceeding can protect plaintiffs' rights.[3] For their part, plaintiffs state that they have received fair and reasoned rulings from the state court; however, they urge that, under Tovar, a federal court should especially favor exercising its jurisdiction in civil rights cases.

Although no doubts have been raised about the fairness or adequacy of the state court proceedings, a federal court must be careful not to shirk its obligation to exercise jurisdiction, especially in civil rights cases. For this reason, this factor is basically neutral, perhaps tipping slightly in favor of abstention.

### e. Forum Shopping

Plaintiffs note that defendant fails to identify any adverse motion or pending adverse motion in state court that plaintiffs are seeking to avoid by filing suit in federal court. For its part, defendant admits that there is only circumstantial evidence that plaintiffs are forum shopping. It notes here and elsewhere that plaintiffs have not asked the state court to amend the operative complaint in that action. Defendant also points out that plaintiff has not offered any reasons why the pre-March 6, 2007, allegations belong in state court, while the post-March 6, 2007, allegations belong in federal court. In summary, there is neither a strong showing of forum shopping by defendant nor a strong rationale, not involving forum shopping, offered by plaintiffs to explain the unfolding of their litigation strategy. As such, this factor is neutral.

7

1  The foregoing analysis makes it plain that this case does not present the sort of "exceptional
2  circumstances" meriting a dismissal or stay pursuant to Colorado River.  While the state forum
3  clearly has precedence, the action in this court hinges entirely on federal law and does not fall into a
4  category of disputes for which Congress has expressed a preference for unified state litigation, rather
5  than piecemeal litigation.

II. Stay of Proceedings

The Colorado River Doctrine aside, a court may stay proceedings as part of its inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North Am. Co., 299 U.S. 248, 254 (1936).  Use of this power "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."  Id. at 254-55.  It is within a district court's discretion to grant or deny such a stay. See Lockyer v. Mirant Corp., 398 F.3d 1098, 1105, 1109 (9th Cir. 2005).

In this case, the parties' submissions do not fully clarify the extent to which the parallel state and federal actions can be adjudicated with economy and without undue duplication of effort. Counsel can aid the court by submitting proposals regarding how this could be accomplished.  To that end, the court will grant a short stay of other activity in this case until such time as the parties submit a supplemental joint case management statement ("joint statement") and are heard at a case management conference.

Plaintiffs' and defense counsel will meet, and defense counsel will work in good faith with plaintiffs' counsel to develop a joint statement setting forth proposals for how to litigate the federal action in such a way as to enhance judicial efficiency and to avoid duplication of effort with the state forum.  The joint statement is to address that issue only, and it shall be filed no later than January 26, 2009.

CONCLUSION

For the foregoing reasons, defendant's motion to dismiss, stay or transfer is DENIED. A stay is GRANTED until such time as the parties provide a supplemental joint case management statement in accordance with the foregoing. A joint case management conference statement shall be filed on or before January 26, 2009, and the parties who will try this action shall appear before this court for a case management conference on February 2, 2009, at 3:00PM.

IT IS SO ORDERED.

Dated: January 5, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. Defendant styles its motion as a "Motion to Dismiss, Stay or Transfer Complaint for Damages"; however, the substance of defendant's supporting memorandum contemplates only a dismissal or stay, pursuant to the Colorado River doctrine. In federal court, a "transfer" refers to the reassignment of a case from one federal court to another, and defendant does not make such a request.

2. Defendant does not argue that plaintiff's section 1981 claims should be viewed differently than the section 1983 claims at issue in Tovar and Martinez.
   Regarding Martinez, the court notes that defendant's reply brief craftily excises and quotes dicta from footnote 6 (a digression from the surrounding analysis) in an attempt to argue that Martinez somehow casts doubt upon the continuing validity of Tovar's holding. See Reply at 6-7. In fact, the Martinez court, also in dicta, agreed with the principle stated in Tovar. See Martinez at 785.

3. Defendant, in its motion, also states that there is no per se civil rights exception to abstention doctrine, citing three cases: Le v. County of Contra Costa, 1999 U.S. Dist. LEXIS 19611 (N.D. Cal. 1999), at *3; C-Y Development Co. v. City of Redlands, 703 F.2d 375, 380 (9th Cir. 1983); Pearl Investment Co. v. City and County of San Francisco, 774 F.2d 1460, 1463 (9th Cir. 1985). Plaintiffs distinguish each of these cases, see Opp. at 11-12, and defendant does not attempt to refute plaintiffs' analysis of these cases in its reply.